IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **RUSSELL T. HANDY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.: 4:20-cv-03751 |
| | § | |
| **UNITED AIRLINES, INC.,** | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### I.
### INTRODUCTION

Russell T. Handy ("Plaintiff") files this Original Complaint against United Airlines, Inc. ("Defendant") and respectfully shows as follows.

### II.
### PARTIES

1. Plaintiff is an individual and a citizen of Harris County, Texas.

2. Defendant is a corporation organized under the laws of the state of Delaware with its principal place of business located at 233 S. Wacker Drive, Chicago, Illinois 60606. Defendant may be served with process, including citation and a copy of this lawsuit, by serving Defendant's registered agent for service of process at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or wherever Defendant may be found.

### III.
### JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under federal law.

## IV.
## VENUE

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in Harris County, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Harris County.

5. Harris County lies within the Houston Division of Southern District of Texas, as set forth in 28 U.S.C. § 124(a)(1)/124(c)(3).

## V.
## BACKGROUND FACTS

6. Plaintiff worked for Defendant from April 24, 1994 until he was wrongfully terminated on September 26, 2019.

7. During Plaintiff's long employment with Defendant, he was subject to Defendant's random drug test policy. Plaintiff failed a random drug test in December 2018 for codeine. However, Plaintiff does not take illegal drugs and he advised Defendant that he had been ill and taken a friend's cough syrup without realizing it had codeine in it.

8. On or around February 1, 2019, Plaintiff was placed on a Last Chance Agreement (LCA). The EAP Counselor (Phillip Cariello) unprofessionally told Plaintiff that United Airlines should have fired Plaintiff instead of placing him on the LCA.

9. Plaintiff was then required to complete extensive paperwork for Defendant, which required him to list his disabilities and the medications he takes. Plaintiff disclosed that he is HIV positive and provided a list of his prescription medication.

10. After Plaintiff's random drug test result and after he submitted the paperwork regarding his HIV status, Defendant began treating him differently.

11. Defendant and Mr. Cariello frequently doubted and questioned Plaintiff's ability and treated him like a habitual drug user who could not be trusted or relied upon. Mr. Cariello

frequently told Plaintiff he believed he was still using drugs, threatened Plaintiff with more invasive drug testing, and referenced the LCA at every opportunity. This heightened scrutiny was based on one random drug test result, for which Plaintiff provided a rational explanation, Plaintiff's HIV status, and the perception that a person's HIV status meant he was an illegal drug abuser.

12. Due to his LCA, Plaintiff was required to submit to additional random drug testing as requested by Defendant. Plaintiff was required to daily call a drug-testing line and appear for random drug tests, if required, on the same day in Houston, Texas. Plaintiff was informed that his drug testing would only take place in Houston. However, Plaintiff's position required him to travel and Defendant was aware of his travel schedule ahead of any random drug test. Defendant, aware that Plaintiff was out of the Houston area for work, would still required him to appear in Houston for random drug tests, forcing Plaintiff to travel back from Chicago, IL and Raleigh, NC to submit to a drug test. Defendant did not provide different testing sites for when Plaintiff was required to travel out of town on business.

13. On August 7, 2019, Plaintiff called in sick to work because he was in excruciating pain from kidney stones. Plaintiff did not call to the random drug test line because he was only required to call in on days he was working, and he could not appear to take his drug test since he was out because of kidney stones.

14. The following day, when Plaintiff was feeling better, he called the drug test scheduling line, and found that there was no drug test scheduled for him that day. Plaintiff called Yonaira Zahand, the no-notice testing coordinator, to see what he needed to do about the missed drug test, but he did not hear back from Ms. Zahand that day. Plaintiff returned to work on

August 8, 2019, and while checking the voicemail system, he was made aware that on the day prior, he was scheduled for a no-notice test.

15. On August 9, 2019, Plaintiff continued to try to reach Ms. Zahand concerning the missed drug test. Plaintiff asked a coworker to go to the office to see if she was in and made several calls to her work and cell phone numbers but later learned that Ms. Zahand was out of the office that day.

16. At around 9:30 a.m. on Monday, August 12, 2019, Plaintiff spoke with Ms. Zahand about the missed drug test. This was Ms. Zahand's first day back in the office, and Plaintiff had his regularly scheduled conference call with Mr. Cariello that day. He explained to her that he was under doctor's care for kidney stones and did not make it to work August 7, 2020. At that point, Ms. Zahand was unaware that Plaintiff had missed his drug test. When Plaintiff asked what he needed to provide to excuse the missed drug test, Ms. Zahand told him that he would have to speak with Mr. Cariello. Plaintiff asked if he could go in for a drug test or if he could test while at his current location, but Ms. Zahand said he could not be tested at his current location or on August 13, 2019, because the drug test was supposed to be random.

17. That same day, Plaintiff called Mr. Cariello for his monthly consultation and Mr. Cariello asked Plaintiff if he had any "new stresses in [his] life" and if he was drinking more. Plaintiff told Mr. Cariello that he was not drinking alcohol at all during that time because of his kidney stones. Mr. Cariello also asked Plaintiff personal questions about his living situation. Plaintiff then informed Mr. Cariello that he had missed his drug test on August 7th because he was not at work and Mr. Cariello told Plaintiff he would need to provide a doctor's note by the end of the week.

18. Plaintiff called into the no-notice drug test line on August 13, 2019, after Plaintiff reported to work for his 3:30 PM to 4:30 PM class. During his class, Plaintiff grew concerned that he may have been scheduled for a drug test that day, despite being told by Ms. Zahand on the 12th that he could not be tested on the 13th. During a video presentation to the class, Plaintiff called the drug test scheduling line and learned that he had in fact been scheduled for a drug test that day, so he cut class short and rushed over to the testing center, but by the time he arrived, the testing center had closed.

19. On August 14, 2019, Plaintiff went to Mr. Cariello's office first thing in the morning and explained what happened with the drug test on the 12th and 13th. During that same conversation, Plaintiff took the opportunity to also ask Mr. Cariello why he was so focused on Plaintiff's drinking, when the original violation was for alleged drug use. Mr. Cariello then accused Plaintiff of illegal drug use stating, "I feel that you are still using." Plaintiff asked Mr. Cariello what he believed Plaintiff was still using, but he did not respond. Mr. Cariello went on to explain the signs and symptoms of an addict and accused Plaintiff of deflecting the conversation and making excuses. Mr. Cariello said he could help Plaintiff more if he would stop denying that he was using and told Plaintiff he may want to do blood work that could go back 7-10 days. Plaintiff said he had no problem with the blood testing, but Mr. Cariello then claimed they could not do that.

20. Plaintiff offered to go to the testing center, to see his primary doctor, or provide a hair sample to prove that he was not using any illegal drugs, but Mr. Cariello said he was waiting for his boss to call him back and that Plaintiff should go home for the time being.

21. On August 15, 2019, Plaintiff was required to attend a meeting to explain why he did not appear for drug testing on August 7, 2019 and August 12, 2019. Plaintiff explained that

he had been under doctor's care for kidney stones and that his physician recommended that he work from home and rest. Plaintiff also explained what happened on August 12th and 13th and told of how he had been working in Chicago on August 13th and was therefore unable to drug test at his Houston testing center. Defendant refused to accept the doctor's note or explanations for the 12th or 13th. Defendant also refused Plaintiff's offers to go to the testing center, his primary care doctor, or provide a hair sample to prove that he was not using illegal drugs.

22. On September 5, 2019, an Investigatory Review Meeting was held, and Plaintiff again provided a doctor's note excusing his failure to appear for the August 7, 2019 drug test. Plaintiff explained that he spoke to the drug test scheduler regarding the August 12, 2019 drug test and had asked for approval to test outside of Houston since he was working in Chicago at the time, but he was told he could not test outside of Houston.

23. On September 26, 2019, Plaintiff was discharged for violating his LCA by allegedly failing to call the no-notice drug testing line twice and for failing to provide Defendant with a legitimate and verifiable medical explanation. After Plaintiff was terminated, two grievance hearings were held in which he provided appropriate medical documentation for having missed the drug tests but Defendant refused to accept this documentation.

24. In the grievance determination letter dated March 13, 2020, the board acknowledged that Plaintiff submitted a doctor's note as to why he missed the first test but determined that it was not a "legitimate and verifiable medical explanation for why he missed the test," and Plaintiff's grievance was denied.

## VI.
## CONDITIONS PRECEDENT

25. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, and this Charge was filed within 300 days after Plaintiff was terminated.

26. The EEOC issued Plaintiff a right to sue letter on August 10, 2020.

27. Plaintiff has timely exhausted all of his administrative remedies.

## VII.
## CAUSES OF ACTION

**A.   Cause of Action—Disability Discrimination—Failure to Accommodate—ADA**

28. Plaintiff incorporates each of the foregoing paragraphs.

29. Plaintiff requested a reasonable medical accommodation.

30. Defendant refused to provide Plaintiff with a reasonable medical accommodation.

31. Defendant discriminated against Plaintiff because of Plaintiff's disability and/or perceived disability.

32. Defendant's actions violated 42 U.S.C. § 12112.

**B.   Cause of Action—Discrimination—ADA**

33. Plaintiff incorporates each of the foregoing paragraphs.

34. Defendant discriminated against Plaintiff because of Plaintiff's disability and/or perceived disability.

35. Defendant's actions violated 42 U.S.C. § 12112.

**C.   Cause of Action—Wrongful Termination—Discrimination—ADA**

36. Plaintiff incorporates each of the foregoing paragraphs.

37. Defendant terminated Plaintiff's employment because of Plaintiff's disability and/or perceived disability.

38. Defendant's actions violated 42 U.S.C. § 12112.

**D.    Cause of Action—Unlawful Retaliation—ADA**

39. Plaintiff incorporates each of the foregoing paragraphs.

40. Plaintiff engaged in protected activity as set forth in 42 U.S.C. § 12203.

41. In response, Defendant retaliated against Plaintiff and ultimately terminated Plaintiff's employment.

42. Defendant's actions violated 42 U.S.C. § 12203.

## VIII.
## DAMAGES

43. Plaintiff incorporates each of the foregoing paragraphs.

44. Defendant's actions violated 42 U.S.C. § 12112 and 42 U.S.C. § 12203, which entitles Plaintiff to recover from Defendant back pay, front pay, as well as pre-judgment and post-judgment interest.

45. Plaintiff is also entitled to recover from Defendant compensatory damages as provided for under 42 U.S.C. § 1981a(a)(1).

46. Because Defendant's actions were done with malice and/or reckless indifference to Plaintiff's federally-protected rights, Plaintiff is entitled to recover from Defendant punitive damages as provided for under 42 U.S.C. § 1981a(a)(1) and (b)(1).

47. Plaintiff seeks all damages available to him under federal law.

## IX.
## ATTORNEYS' FEES AND COSTS

48. Plaintiff incorporates each of the foregoing paragraphs.

49. Plaintiff retained the services of undersigned counsel to prosecute his claims.

50. Pursuant to 42 U.S.C. § 12205, Plaintiff is entitled to recover a reasonable attorneys' fee from Defendant, including reasonable expert fees and costs.

## X.
## INJUNCTIVE AND DECLARATORY RELIEF

51. Plaintiff incorporates each of the foregoing paragraphs.

52. Plaintiff requests the Court enter an order providing injunctive and declaratory relief including, but not limited to:

   a. Prohibiting Defendant from engaging in unlawful discrimination;

   b. Reinstating Plaintiff's employment with Defendant with backpay;

   c. Reporting to the Court on the manner of compliance with the terms of a final order issued by this Court;

   d. Paying court costs;

   e. A declaration that Defendant violated Plaintiff's rights under state and federal law, engaged in unlawful employment discrimination, and considered an illegal factor in terminating Plaintiff's employment; and

   f. Any additional equitable relief the Court deems proper.

## XI.
## RESPONDEAT SUPERIOR

53. Plaintiff incorporates each of the foregoing paragraphs.

54. Defendant is liable for the acts and/or omissions of their respective agents, representatives, employees, servants, and officers.

## XII.
## JURY DEMAND

55. Plaintiff demands a trial by jury.

## XIII.
## CONCLUSION AND PRAYER

56. Plaintiff respectfully requests that Defendant be cited to appear and answer, and that upon final trial of this matter, the Court enter judgment awarding Plaintiff:

   A. Back pay and front pay (including benefits);

B. Compensatory damages;

C. Punitive damages;

D. Injunctive and declaratory relief, including but not limited to, an Order:

    a. Prohibiting Defendant from engaging in unlawful discrimination;

    b. Reinstating Plaintiff's employment with Defendant with backpay;

    c. Reporting to the Court on the manner of compliance with the terms of a final order issued by this Court;

    d. Paying court costs;

    e. A declaration that Defendant violated Plaintiff's rights under state and federal law, engaged in unlawful employment discrimination, and considered an illegal factor in terminating Plaintiff's employment; and

    f. Any additional equitable relief the Court deems proper;

E. Court costs;

F. Pre-judgment and post-judgment interest at the rate set by law; and

G. All legal or equitable relief this Court deems proper.

Respectfully submitted,

*/s/Jamie J. Gilmore*
JAMIE J. GILMORE
Texas Bar No. 24045262
jgilmore@galyen.com
BRITTNEY L. THOMPSON
Texas Bar No. 24104618
bthompson@galyen.com
**BAILEY & GALYEN**
1300 Summit Avenue, Suite 650
Fort Worth, Texas 76102
Telephone: 817-276-6000
Facsimile: 817-276-6010
**ATTORNEYS FOR PLAINTIFF**